This is a suit for workman's compensation, wherein plaintiff alleges that on June 19, 1941, while in the course and scope of his employment by the defendant company, he sustained a fracture of the ulna of his right arm and injury to the muscles and tissues of that arm, as a result of being struck with a stick by a fellow employee. Plaintiff at the outset prayed for judgment against his employer and its insurance carrier for compensation for total and permanent disability on the basis of 65% of his wages of $16.50 per week, for a period not exceeding 400 weeks, and for the statutory medical expenses. But before trial he reduced his claim for compensation to 30 weeks.
The defendants admitted that the plaintiff was struck with a stick by a fellow employee, but interposed the special defense that the plaintiff was in the act of assaulting the fellow employee when he was struck, and hence has no standing in court.
The case was tried before Judge Womack, who retired before rendering a decision on the case, and the case was later submitted to Judge Robert S. Ellis, Jr., for his consideration and decision. Judge Ellis rendered judgment in favor of the defendants, and the plaintiff has appealed.
From a review of the testimony we are satisfied that the plaintiff sustained a fracture of his right arm resulting from the blow admittedly struck with a stick by a fellow employee named "Al" Range and that as a result of this blow he was disabled for a period of 30 weeks. The serious question in the case is whether or not defendants have proved their special defense that plaintiff's injury was caused by his willful intention to injure Range, his fellow employee. Under the provisions of Section 28 of Act 20 of 1914, the burden is placed on the employer to prove the facts necessary to support such a defense, and we will briefly review the pertinent testimony to determine whether or not the defendants have sustained this burden of proof.
The actual blow was witnessed only by the plaintiff and Range, his fellow employee, and their versions of the occurrence are contradictory.
The plaintiff testifies that he and Range and White were working under Mr. Galloway; that they were painting ice boxes and cases; that to do this painting he was using a spray gun; that "somehow or other Range did not much want to help him paint cases"; that he took the matter up with Mr. Galloway, who told him to divide the painting and that he then told Range to help paint some cases, and Range told him that he was not going to help, whereupon plaintiff told Range that he was going to see Mr. Galloway and tell Mr. Galloway. He states that he then went to look for Mr. Galloway, but failed to see him, but that when he returned Range asked him if he had told Mr. Galloway, and he answered that he had, and thereupon, without any provocation and while he was using a spray gun, Range struck him with a stick about 3 1/2 feet long and 2 1/2 inches wide used for pulling coca cola cases.
Range testified that in the morning he and White were busy painting a truck and that they finished the truck after dinner and that they thereupon came in the building where Turner, the plaintiff, was, and that he, Range, then started sanding an ice box; that plaintiff told him "You are going to paint these cases"; and that Turner told him that he was foreman on that side, *Page 154 
which Range states was not true as he knew that Mr. Galloway was the boss; that Turner finally said that he was going to tell Mr. Galloway, and went away for that purpose and on coming back started to argue with him and White about painting the cases, and that he, Range, told plaintiff that he would not paint the cases, but that he would pull them, whereupon plaintiff told Range that he was going to fix him; that he was the foreman and that Range was going to finish these cases, and Range then told plaintiff again that he was not going to paint the cases, whereupon plaintiff went back of the room and got a hammer, and Range states: "I just started back to sanding on the ice box again, and he walked around me two or three times with the hammer, and he drew back, and I still kept my eye on him"; that when the boys (apparently White and Plunkett, fellow employees) told them to stop that, he answered that he was not doing anything, that it was Turner, and that Turner then said: "All right", and finally went and put the hammer down and stated again, "All right, God damn it, I'll fix you", and then went back (apparently after the other employees had gone out) in the rear of the room and picked up a stick and an ice pick and that as he came on Range with the ice pick in his right hand and the stick in his left hand, he, Range, struck plaintiff with a stick on the right arm.
It seems clear that if we are to believe plaintiff's version of the occurrence, the defendants have failed to sustain the burden of proving their special defense, and on the other hand if we are to believe Range's version of the occurrence, we must conclude that the special defense has been proved.
In reviewing the testimony we fail to find any corroboration of plaintiff's version, whereas there is strong corroboration of the testimony of Range. White testified that the question arose as to which of the three, Turner, Range and himself, would paint the cases, and which would push or pull the cases, and that he, White, stated that he was going to pull the cases and that Turner said that Range would paint the cases, which Range refused to do, and he testifies further as follows:
"* * * We tarried around in the room a few minutes and neither one of us painted the case. I asked, `Is no one going to paint the case?' Each one of they said they weren't. Turner said he wasn't going to paint them, and Al (Range) said he wasn't going to paint them. We stayed around in the room a few minutes longer. We had some more cases already painted and they were ready to stencil. I started to go across the street to get some red paint to stencil those painted cases, and I taken a second thought. I said, `If either of you pull the cases I will paint them'. Turner said, `You don't have to paint the cases. Al is going to paint the cases.' We tarried a few minutes longer, and I decided I would go across the street and get the red paint and stencil the cases already painted. So I go over there and get the red paint and come back and start to stencil the cases that were already painted. No one wasn't painting the cases yet. So Al and Turner, they were arguing about who was to paint the cases. I can't relate exactly what they said. Neither one of them wanted to paint the cases. So Turner said, `I will go and see Mr. Galloway.' He goes over to see Mr. Galloway. Whether he saw him I don't know. He came back over there. They started arguing again. I goes back across the street after a jug of water or something. * * *"
Another employee, Ira Plunkett, testified as follows:
"A. They had a good many Coca Cola cases to be painted. Turner told Al to paint them. Al said he wasn't going to paint them. Turner said somebody would have to paint them. At that time Turner went back to the back and got a claw hammer.
"Q. A claw hammer? A. A hammer — and walked by Al with the hammer.
"Q. Did he hit Al? A. He didn't hit Al. Al watched him, and he didn't bother him. I was still on my work bench.
"Q. Did Turner say anything to Al? A. He called him by his own language.
"Q. Tell the stenographer what he called him. A. * * * (too vile to quote)."
It will be noted that the testimony reviewed corroborates Range's testimony to the effect that the plaintiff, prior to being struck, had assumed an aggressive attitude toward Range in trying to "boss" him contrary to his authority, and in calling him a vile name and in assuming a threatening demeanor toward Range with a claw hammer in his hand. The corroboration of these material points in Range's testimony lends weight to the vital point in his testimony *Page 155 
to the effect that he struck plaintiff when the latter advanced on him in a threatening manner with an ice pick in his right hand. Moreover, the very fact that the blow from the stick wielded by Range landed on the right arm of plaintiff tends to corroborate Range's statement that plaintiff was holding a dangerous weapon, such as an ice pick, in his right hand from which Range was trying to protect himself; if plaintiff had been innocently using a spray gun, as he claims, it is more likely that the blow would have landed on some other part of his body.
From these considerations, it is our conclusion that the preponderance of the evidence is to the effect that plaintiff sustained the blow and injury to his right arm from a stick wielded by his fellow employee, Range, when the latter was being assaulted by plaintiff, or, at least, could reasonably believe he would be so assaulted, and that therefore the defendants have proved their special defense to a legal certainty.
Judgment affirmed.